United States District Court
Southern District of Texas
**ENTERED**
September 29, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CELMIRA CECILIA TURNER and VANESSA LA BARRIE<br>　　Plaintiffs,<br><br>vs.<br><br>COPELAND GROUP USA INC d/b/a COPELAND INSURANCE GROUP,<br>　　Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO<br>4:21-cv-00640<br><br><br><br>JUDGE CHARLES ESKRIDGE |

**OPINION AND ORDER
GRANTING MOTION FOR SUMMARY JUDGMENT**

The motion for summary judgment by Defendant Copeland Group USA d/b/a Copeland Insurance Group is granted. Dkt 40.

1. Background

Plaintiffs Vanessa La Barrie and Celmira Turner are former sales and marketing directors at CIG's Houston office. La Barrie worked there from February 2020 to October 2020. Turner worked there from October 2020 to November 2020. Dkt 29 at ¶ 12.

Plaintiffs allege La Barrie was the only African American sales and marketing director at CIG during her tenure. Dkt 29 at ¶ 22. CIG allegedly refused to provide her a team of agents and refused to allow her to work remotely. Dkt 29 at ¶¶ 14 & 16. Yet other similarly situated individuals outside her protected class—namely Brandy Wallace, Denise Reid, and Kim Ayala—allegedly received

some or all of these privileges. Id at ¶¶ 14, 16, & 22. La Barrie was terminated in October 2020 by Mel Copeland, the chief executive and owner of CIG. Id at ¶ 20. The reason given was attendance and performance issues. Dkts 40-1 at 3 & 40 at 4; see also Dkt 40-8 (showing La Barrie recruited fewer agents than most of her peers).

La Barrie was then replaced by Plaintiff Celmira Cecilia Turner, who is also African American. Dkt 29 at ¶ 22. Plaintiffs allege that Turner also was the only African American sales and marketing director at CIG during her tenure. Ibid. Dusty Singleton was Turner's immediate supervisor. She is alleged to have openly mocked Turner and consistently made "subtle remarks" about her "race and stereotypes." Id at ¶ 25. At some point, Turner discussed these comments with Heather Mayfield, an individual in CIG's human resources department. Id at ¶ 28. Singleton also allegedly moved Turner from the directors' office to the front office, a substantially less desirable location. Id at ¶ 26. And Plaintiffs contend that similarly situated individuals outside Turner's protected class—Kim Ayala, Denise Reid, Elsa Isais, Alejandre Ruiz, and Dwayne Gueno—received more favorable treatment. Id at ¶ 32. Mel Copeland terminated Turner in November 2020, replacing her with an individual outside her protected class. Id at ¶ 29.

La Barrie and Turner brought claims against CIG for (i) race discrimination under Section 1981, Title VII, and the Texas Employment Discrimination Act; (ii) defamation; (iii) gender discrimination under Title VII; (iv) hostile work environment under Title VII; and (v) violations of the Equal Pay Act. Dkt 10 at 1. On prior motion to dismiss, Dkt 16, the claim by La Barrie under Title VII for hostile work environment and the claims for defamation by both La Barrie and Turner were dismissed with prejudice. All other claims were dismissed without prejudice subject to repleading. Dkt 27.

Plaintiffs then filed their third and fourth amended complaints. Dkts 28 & 29. On further motion to dismiss for failure to state a claim, the Equal Pay Act claims and

2

gender discrimination claims were dismissed with prejudice. Dkt 34 at 5; see Dkt 30. Discovery later closed in November 2022. Dkt 38. And Turner settled her claims with CIG the next month. Dkt 47 at 1.

Pending is a motion by CIG for summary judgment as to La Barrie's race discrimination claims. Dkt 40. Also pending is a motion by La Barrie to strike CIG's summary judgment evidence. Dkt 42.

### 2. Legal standard

Rule 56(a) of the Federal Rules of Civil Procedure requires a court to enter summary judgment when the movant establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is *material* if it "might affect the outcome of the suit under the governing law." *Sulzer Carbomedics Inc v Oregon Cardio-Devices Inc*, 257 F3d 449, 456 (5th Cir 2001), quoting *Anderson v Liberty Lobby Inc*, 477 US 242, 248 (1986). And a dispute is *genuine* if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v CCC & R Tres Arboles LLC*, 736 F3d 396, 400 (5th Cir 2013), quoting *Anderson*, 477 US at 248.

The summary judgment stage doesn't involve weighing the evidence or determining the truth of the matter. The task is solely to determine whether a genuine issue exists that would allow a reasonable jury to return a verdict for the nonmoving party. *Smith v Harris County*, 956 F3d 311, 316 (5th Cir 2020). Disputed factual issues must be resolved in favor of the nonmoving party. *Little v Liquid Air Corp*, 37 F3d 1069, 1075 (5th Cir 1994). All reasonable inferences must also be drawn in the light most favorable to the nonmoving party. *Connors v Graves*, 538 F3d 373, 376 (5th Cir 2008).

The moving party typically bears the entire burden to demonstrate the absence of a genuine issue of material fact. *Nola Spice Designs LLC v Haydel Enterprises Inc*, 783 F3d 527, 536 (5th Cir 2015); see also *Celotex Corp v Catrett*, 477 US 317, 322–23 (1986). But when a motion for

summary judgment by a defendant presents a question on which the plaintiff bears the burden of proof at trial, the burden shifts to the plaintiff to proffer summary judgment proof establishing an issue of material fact warranting trial. *Nola Spice,* 783 F3d at 536. To meet this burden of proof, the evidence must be both "competent and admissible at trial." *Bellard v Gautreaux,* 675 F3d 454, 460 (5th Cir 2012).

3. Analysis

Before analyzing the merits of the motion by CIG for summary judgment, La Barrie's objections must be reviewed.

a. Objection to evidence

La Barrie objected on hearsay grounds to a list of CIG's comparative pay data (Dkt 40-5); CIG's 2020 Recruited Agents Report (Dkt 40-8); paragraph six of a declaration by Mel Copeland regarding La Barrie's poor job performance (Dkt 40-1); and paragraphs six and seven of a declaration by Heather Mayfield, CIG's human resource director, regarding La Barrie's starting pay and job performance (Dkt 40-4).

At hearing, it was noted that with respect to CIG's comparative pay data, the only items that would be considered are those of Turner, La Barrie, Singleton, Ayala, Reid, and Wallace. Dkt 58; see Dkt 40-5. Beyond that, all but one of the objections were overruled. Dkt 58. Sustained was a speculation objection to a statement in the declaration of Heather Mayfield that "Mel Copeland chose to terminate La Barrie due to her poor attendance and performance." Dkt 40-4 at ¶ 14. The remainder of that declaration and all other exhibits will be considered. And as to the stricken statement, it was noted that Mel Copeland said the same thing about himself in his own declaration. Dkt 40-1 at ¶¶ 6–8.

b. Merits

La Barrie's remaining claims are for race discrimination under section 1981, Title VII, and the Texas Employment Discrimination Act. These are subject to the

4

familiar burden-shifting approach set down in *McDonnell Douglas Corp v Green*, 411 US 792 (1973). See *EEOC v LHC Group, Inc*, 773 F3d 688, 694 (5th Cir 2014) (applying to discrimination claims); *Shackelford v Deloitte & Touche, LLP*, 190 F3d 398, 403 n 2 (5th Cir 1999) (stating that law governing Title VII and TCHRA is identical); *LaPierre v Benson Nissan, Inc*, 86 F3d 444, 448 n 2 (5th Cir 1996) (stating that Section 1981 claims are "governed by the same evidentiary framework" as Title VII claims).

Under this framework, the plaintiff "must carry the initial burden . . . of establishing a *prima facie* case." *McDonnell Douglas*, 411 US at 802. If this burden is met, it then shifts "to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Ibid. If the employer does so, the plaintiff must then be "afforded a fair opportunity to show that" the stated reason for rejection "was in fact pretext." Id at 804; see also *Reeves v Sanderson Plumbing Products, Inc*, 530 US 133, 143 (2000).

i. *Prima facie* case

To establish a *prima facie* case in discrimination actions, the plaintiff must show that he or she (i) is a member of a protected class, (ii) was qualified for the position, (iii) was subject to an adverse employment action, and (iv) the employer selected someone outside the protected class, or (in the case of disparate treatment) that other similarly situated employees were treated more favorably. See *Okoye v University of Texas Houston Health Science Center*, 245 F3d 507, 512–13 (5th Cir 2001); *Bryan v McKinsey & Co, Inc*, 375 F3d 358, 360 (5th Cir 2004).

CIG doesn't dispute the first three elements. It contends only that La Barrie can't show that she was replaced by someone outside her protected class or treated less favorably than other similarly situated employees. Dkts 40 at 10 & 43 at 16.

For her part, La Barrie doesn't argue that she was replaced by someone outside her protected class, given that

5

she was replaced by Turner. See Dkt 43 at 16. She instead contends that she was treated less favorably than similarly situated employees outside of her protected class, who (she says) were given more resources and opportunities. She identifies three individuals as comparators—Brandy Wallace, Kim Ayala, and Denise Reid. Dkt 43 at 20–21; see also Dkt 29 at ¶¶ 14–16, & 22.

For disparate treatment claims, the Fifth Circuit requires comparators to be "nearly identical" in "circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." The "plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Lee v Kansas City Southern Railway Co*, 574 F3d 253, 260 (5th Cir 2009).

CIG argues that La Barrie "failed to present evidence showing that the circumstances of her termination and the retention of her proffered comparators . . . indicate they are similarly situated [to La Barrie] or treated differently." Dkt 45 at 3. Specifically, it contends that La Barrie can't establish that the named comparators are proper comparators under Fifth Circuit precedent because she (i) presents no evidence that the proffered comparators shared the same supervisor (Dusty Singleton), (ii) fails to show that the comparators' responsibilities or conduct were similar to that of La Barrie, (iii) presents no evidence that shows the comparators "inherited recruited clients" from Singleton; and (iv) provides no evidence that "the proffered comparators had the same performance and attendance issues" as La Barrie. Dkt 45 at 3–4.

With regard to (i) and (iii), La Barrie doesn't dispute that she was supervised by Singleton, while simultaneously failing to provide any evidence that Reid, Ayala, and Wallace were. And to the extent that she claims that her proffered comparators were "allowed access to marketing money and resources to retain more recruits," Dkt 43 at 20,

6

she admitted in her deposition that she doesn't know who grants or denies requests for marketing money by Reid, Ayala, and Wallace. Dkt 43 at 64. She otherwise provides no evidence, besides her statements in deposition, that the three comparators received resources that she couldn't access. While La Barrie does point out that Singleton received "all the recruits she was promised," she doesn't provide any additional facts as to Reid, Ayala, and Wallace. Id at 20. As a consequence, she hasn't provided any evidence that the three comparators were either supervised by Singleton or actually received more marketing money or resources than La Barrie.

With regard to (ii), La Barrie presents no evidence of how long Reid or Wallace had been employed by CIG. In her deposition, she observed that Ayala had been there "for a long time." Id at 69. And with reference to Ayala, she also stated that "you can't compare me to the people at the top." Ibid. It is also established without dispute that La Barrie had a higher starting salary than the three comparators. See Dkt 40-5. Essentially, La Barrie's three alleged comparators had worked at CIG for longer than her or for an entirely unknown amount of time, with all receiving less payment than her. Ibid. La Barrie thus fails to show that the alleged comparators had the same responsibilities as her or acted in a similar manner.

With regard to (iv), La Barrie has provided no information that any of the proffered comparators had similar attendance or performance issues. In fact, La Barrie admits that while she was "supposed" to have performance reviews, she didn't know if other employees received any reviews, including the three comparators. Dkt 43 at 86. La Barrie thus fails to show that the proffered comparators received similar performance reviews—or any reviews, for that matter.

On this record, La Barrie hasn't shown that any of her comparators had the same supervisor as La Barrie, the same job or responsibilities, or comparable violation histories. None of them can be found to be "nearly identical," as required by caselaw. See *Lee*, 574 F3d at 260,

7

citing *Little v Republic Ref Co, Ltd,* 924 F2d 93, 97 (5th Cir 1991).

In short, La Barrie hasn't established her *prima facie* case of race discrimination.

This means that her other arguments with respect to the *McDonnell Douglas* burden-shifting analysis needn't be addressed. However, were the analysis to proceed to the question of pretext, the *same-actor inference* would pertain. Such inference is warranted when "the individual who allegedly discriminated against the plaintiff was the same individual who hired the plaintiff." *Russell v McKinney Hospital Venture*, 235 F3d 219, 228 n 16 (5th Cir 2000); see also *Spears v Patterson UTI Drilling Co*, 337 Fed Appx 416, 422 (5th Cir 2009) (inference creates presumption that animus not present where same actor responsible for adverse employment action either hired or promoted employee).

Here, that individual is Mel Copeland. He both hired and terminated La Barrie—and indeed, is the one who replaced her with another member of her protected class, former Plaintiff Turner. See Dkt 40-1. And when asked at her deposition if she had "any reason to believe" that Copeland himself had discriminatory bias against African Americans, La Barrie responded, "Not with me personally. I didn't encounter that with him." Dkt 40-3 at 2.

ii. Assertion of "cat's paw" theory

In seeming aid of her *prima facie* case, La Barrie attempts to summon the "cat's paw theory' to her defense. Dkt 43 at 21–22. "Under the cat's paw theory, a subordinate employee's discriminatory remarks regarding a co-worker can be attributed to the workplace superior, ultimately the one in charge of making employment decisions, when it is shown that the subordinate influenced the superior's decision or thought process." *Haire v Board of Supervisors of La State Univ Agriculture & Mechanical College*, 719 F3d 356, 366 n 11 (5th Cir 2013); see also *Lawson v Graphic Packaging International Inc,* 549 Fed

Appx 253, 258 (5th Cir 2013) (treating same-actor-inference differently than cat's paw theory).

La Barrie argues that a jury could find Dusty Singleton to be the one principally responsible for her firing because she "wielded sufficiently great 'informal' power within [CIG] such that she effectively became the decisionmaker with respect to Plaintiff's termination." Dkt 43 at 22. She points to evidence that she says shows that Singleton (i) made racially discriminatory remarks around La Barrie, (ii) controlled the disbursement of marketing money and, thus, whether La Barrie could recruit more agents, (iii) unilaterally transferred La Barrie's recruited agents without her knowledge or consent, and (iv) received "perks" that her colleagues did not. Id at 22–23.

Even assuming all of those points to be sufficiently established, which is far from evident, they don't support a conclusion that Singleton was the party responsible for the ultimate employment decision of her termination. To the contrary, the declaration of Mel Copeland is undisputed in this regard, that he "had the ultimate authority in decisions to hire and terminate employees." Dkt 40-1. And as just noted with the same-actor inference, when asked about Copeland at her deposition, La Barrie stated that she had no reason to believe that Copeland had discriminatory bias against African Americans. Dkt 40-3 at 2.

Beyond this, to the extent La Barrie has mustered putative evidence on this point, it doesn't address whether Singleton "influenced" Mel Copeland throughout the process. Instead, Copeland has provided that he did so of his own accord and authority, based on evidence of performance issues related to deficient agent recruitment and poor attendance. Dkt 40-1 at ¶¶ 2, 6–7; see also Dkt 40-4 at ¶ 8 (Mayfield affidavit re agent recruitment) & 40-8 (statistics re same).

On this record, then, the cat's paw theory doesn't apply.

9

4.  Conclusion

The motion for summary judgment by Defendant Copeland Group USA d/b/a Copeland Insurance Group is GRANTED. Dkt 40.

All claims in this action have now been resolved.

This case is DISMISSED WITH PREJUDICE.

A final judgment will enter by separate order.

SO ORDERED.

Signed on September 29, 2023, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge